**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Christopher Ray Rodriguez, | ) | CIV 14-2792-PHX-MHB |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

Pending before the Court is Plaintiff Christopher Ray Rodriguez's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

In April 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning September 1, 2009 (later amended to April 25, 2012). (Transcript of Administrative Record ("Tr.") at 15, 65-71, 295-302.) His applications were denied initially and on reconsideration. (Tr. at 15, 24-34, 303-325.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 15, 47.) A hearing was held on May 22, 2014, (Tr. at 336-79), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 12-23). The Appeals Council denied Plaintiff's request for review (Tr. at 6-11), making the ALJ's decision the final decision of the

1   Commissioner.  Plaintiff then sought judicial review of the ALJ's decision pursuant to 42

2   U.S.C. § 405(g).

3   ## II.  STANDARD OF REVIEW

4       The Court must affirm the ALJ's findings if the findings are supported by substantial

5   evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720

6   (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence

7   means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might

8   accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

9   (1971); see Reddick, 157 F.3d at 720.

10      In determining whether substantial evidence supports a decision, the Court considers

11  the administrative record as a whole, weighing both the evidence that supports and the

12  evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ

13  is responsible for determining credibility, resolving conflicts in medical testimony, and for

14  resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see

15  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably

16  support either affirming or reversing the [Commissioner's] conclusion, the court may not

17  substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

18  ## III.  THE ALJ'S FINDINGS

19      In order to be eligible for disability or social security benefits, a claimant must

20  demonstrate an "inability to engage in any substantial gainful activity by reason of any

21  medically determinable physical or mental impairment which can be expected to result in

22  death or which has lasted or can be expected to last for a continuous period of not less than

23  12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for

24  benefits by following a five-step sequential evaluation:

25      (1)  determine whether the applicant is engaged in "substantial gainful activity";

26      (2)   determine whether the applicant has a medically severe impairment or
        combination of impairments;

27

28

- 2 -

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 25, 2012 – the alleged amended onset date. (Tr. at 17.) At step two, she found that Plaintiff had the following severe impairments: osteoarthritis of the hip, bilateral degenerative joint disease of the knees, and morbid obesity. (Tr. at 17.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 18-19.) After consideration of the entire record, the ALJ found that Plaintiff retained the residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to sit, stand or walk for six hours out of an eight hour workday. The claimant requires a cane or walker for ambulation. The claimant can occasionally climb stairs, never climb ladders, occasionally balance but never stoop, kneel, crouch or crawl. The claimant must avoid concentrated exposure to heights, moving machinery and temperature extremes."[1] (Tr. at 19-21.) The ALJ found that Plaintiff could not perform any of his past relevant work, but, considering his age, education, work experience, and residual functional capacity, there are jobs that exist

---

[1] "Residual functional capacity" (or "RFC") is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

1   in significant numbers in the national economy that Plaintiff could perform.  (Tr. at 21-23.)

2   Thus, the ALJ concluded that Plaintiff "has not been under a disability ... from April 25,

3   2012, through the date of [her] decision."  (Tr. at 23.)

4                                   **IV.  DISCUSSION**

5        In his brief, Plaintiff contends that the ALJ erred by: (1) failing to make a proper

6   finding at step five by erroneously relying on the vocational expert's testimony and failing

7   to resolve conflicts between the DOT and the need for a "cane or walker" as set forth in the

8   residual functional capacity assessment, (2) failing to properly weigh medical source opinion

9   evidence, (3) failing to find "substantial evidence of medically determined impairments," (4)

10  "failing to consider the evidence as a whole in her determination of Plaintiff's credibility,"

11  (5) "failing to properly consider substantial evidence that plaintiff's inability to meet

12  significant requirements of 'light work' results in a determination he is limited to a

13  'sedentary' or 'less-than-sedentary' exertional RFC," and (6) failing to consider new

14  evidence submitted to the Appeal's Council.

15  **1.      The ALJ's step five determination**

16       Plaintiff argues that the ALJ erred by failing to make a proper finding at step five by

17  erroneously relying on the vocational expert's testimony and failing to resolve conflicts

18  between the DOT and the need for a "cane or walker" as set forth in the residual functional

19  capacity assessment.

20       At step five, the Commissioner has the burden of demonstrating that the claimant can

21  perform some work that exists in "significant numbers" in the national or regional economy,

22  taking into account the claimant's residual functional capacity, age, education, and work

23  experience.  See Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).  "The Social Security

24  Administration has taken administrative notice of the [DOT], which is published by the

25  Department of Labor and gives detailed physical requirements for a variety of jobs."

26  Massachi v. Astrue, 486 F.3d 1149, 1153 n.8.  "In making disability determinations, the

27  Social Security Administration relies primarily on the [DOT] for 'information about the

28  requirements of work in the national economy.'"  Id. at 1153 (quoting SSR 00-4p at *2).  The

1   ALJ may also use testimony from a vocational expert ("VE").  See id.  Evidence by a VE

2   should generally be consistent with the DOT, and while neither the DOT nor VE testimony

3   trumps the other when there is a conflict, it is incumbent on the ALJ to identify if a conflict

4   exists and then determine whether the VE's explanation for the conflict is reasonable and

5   whether a basis exists for relying on the expert rather than the DOT.  See id.

6       At the hearing, the ALJ and the VE engaged in the following discussion:

7       [ALJ] Okay.  All right.  Let's go to a hypothetical.  Assume a person the
        claimant's age, which is now 50, with an 11th-grade education and the same
8       past relevant work, with the following restrictions present: The hypothetical
        person can sit six hours out of an eight-hour day; can stand six hours out of an
9       eight-hour day; and can walk six hours our of an eight-hour day; requires a
        cane or walker for ambulation; can occasionally lift and carry 20 pounds;
10      frequently lift and carry 10 pounds; can occasionally climb stairs; never climb
        ladders; occasionally balance but never stoop, kneel, crouch, or crawl.  In
11      addition, the hypothetical person must avoid concentrated exposure to heights,
        moving machinery, and temperature extremes.   All right.  With these
12      restrictions present, could a person do any of the jobs performed by Mr.
        Rodriguez in the past?

13
        [VE]   No, your honor.
14
        [ALJ] Are there jobs in the state or national economy for such a person with
15      these restrictions?

16      [VE]   Yes.  One job would be an electrical accessories assembler.

17      [ALJ] Okay.

18      [VE]   ... This is light with an SVP of 2. ... In the U.S. there are approximately
        37,000 jobs; and in Arizona approximately 600 jobs. ... The next job would be
19      that of a storage facility rental clerk. ... This is light with an SVP of 2.  In the
        U.S. there are approximately 42,000 jobs. ... And in Arizona approximately
20      800 jobs. ... [Third,] [a] ticket seller. ... This is light with an SVP of 2.  In the
        U.S. there are approximately 45,000 jobs; and in Arizona approximately 800
21      jobs.

22      [ALJ] All right.  Mr. Malmuth, is your testimony consistent with the DOT?

23      [VE]   It is with the exception of the use of a cane or walker for ambulation.
        The DOT doesn't describe any of those parts of the RFC.  Other than that, yes,
24      it is consistent.

25      [ALJ] And is it your testimony that a person that used a cane or a walker could
        do the jobs that you've testified to today?
26
        [VE]   It is, your honor, and the reason is that the jobs I suggested allow for a
27      sit/stand option. ... So I believe that the individual would be able to ambulate
        with a cane or a walker for the length of time and duration that was in the
28      hypothetical for storage facility clerk.  With regards to ticket seller and

electrical accessories, those are jobs that are actually performed – the essential functions are performed – in one place.  The ticket seller, where the tickets are being sold, and the electrical assembly at a particular workstation.  There's very little in terms of ambulation. ...

[ALJ]  And what do [you] base that opinion on?

[VE]  This is based on my 25 years of working as a vocational rehab counselor, performing job analyses, observing jobs as performed.  It's really part of my work: developing job analyses, job descriptions for medical clearance. ...

(Tr. at 366-71.)

The record demonstrates that the ALJ posed proper hypothetical questions to the VE setting out all of Plaintiff's particular limitations and restrictions.  Then, considering Plaintiff's limitations, the VE found three representative occupations from the DOT.  The ALJ specifically inquired as to whether the listed occupations were consistent with the DOT, to which the VE responded "yes," "with the exception of the use of a cane or walker for ambulation."

The VE then reconciled any apparent conflict between his testimony and DOT (assuming a conflict can be construed from the DOT's silence or failure to address the need for a cane or walker for ambulation) by opining that "a person that used a cane or a walker could do the [three] jobs that [he] testified to" based on his "25 years of working as a vocational rehab counselor, performing job analyses, observing jobs as performed" – which qualifies as a reasonable explanation according to SSR 00-4p (stating that one reasonable explanation for a conflict could be testimony from a VE based on his personal experience).

Accordingly, having considered the record, the Court finds that substantial evidence supports the ALJ's decision on this issue and, thus, the Court finds no error.

**2.    Medical source opinion evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence.  Specifically, Plaintiff argues that the ALJ improperly rejected or ignored the opinion of treating physician, Dr. Erickson.

"The ALJ is responsible for resolving conflicts in the medical record."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164.  Such conflicts may arise between a treating

- 6 -

physician's medical opinion and other evidence in the claimant's record.  In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight."  Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2).  On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight.  Orn v. Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons.  See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830).  If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record."  Id. (quoting Lester, 81 F.3d at 830).

Although the records indicate that Dr. Erickson's opinion is largely consistent with the objective medical evidence of record, to the extent that said opinion could be construed as more restrictive and, thus, contradictory to the opinions of Drs. Palmer and Kattapong, as well as, the other medical evidence of record, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints

of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Here, the ALJ analyzed the medical evidence in extensive detail.  (Tr. at 19-21.)  The ALJ first began by examining records from Sun Life Family Health Center and Sierra Orthopedics.  (Tr. at 20, 168-99, 200-33, 282-85.)  The ALJ found that Plaintiff reported no muscle weakness or myalgia, no musculoskeletal symptoms, normal extremities, and full range of motion with full strength in both upper and lower extremities.  The ALJ did note that Plaintiff was observed to be obese, and radiographs of the right knee revealed osteoarthritis.

The ALJ noted that after his right knee arthroplasty in October 2012, Plaintiff was restricted from working.  However, in May of 2013, treating orthopedist, Thomas Erickson, M.D., opined that despite Plaintiff's report of pain with "vigorous physical activity," he was able to perform "light duty work, including desk work."  The ALJ found that Dr. Erickson "reiterated his opinion" in September 2013 that Plaintiff was able to perform desk work despite his knee issues.

Next, the ALJ discussed the physical consultative examination performed by Richard Palmer, M.D., on September 21, 2013 – after Plaintiff's surgery. (Tr. at 20, 250-57.)  Plaintiff was found to have a mild to moderately antalgic gait favoring his right lower extremity and he used a walker.  Dr. Palmer opined that Plaintiff was limited to performing work at a light exertional level finding that Plaintiff could sit, stand or walk for 6-8 hours total out of an eight-hour workday but did require the use of an assistive device.  The ALJ noted that Dr. Palmer precluded Plaintiff from climbing ladders, ropes and scaffolds, or kneeling, crouching or crawling.  Dr. Palmer opined that Plaintiff could occasionally climb ramps or stairs, or stoop, and that he was limited in his ability to work around heights, moving machinery or extreme temperatures.

The ALJ then discussed the opinion of state agency medical consultant Vivienne Kattapong, M.D., who opined that based on her review of the medical evidence that she generally agreed with the restrictions proposed by Dr. Palmer – with the exception that she found that Plaintiff could occasionally climb ladders, ropes or scaffolds, or kneel, crouch or crawl.  (Tr. at 20, 258-65.)  She also indicated that Plaintiff should avoid even moderate exposure to hazards.

The ALJ continued discussing medical records from Sun Life Family Health Center and Advanced Orthopaedics.  (Tr. at 20-21, 266-81, 291-94.)  In January 2014, the ALJ noted an onset of left knee pain.  Plaintiff was later assessed as suffering from a medial meniscus tear.  It was recommended that Plaintiff limit his physical activity – including avoiding running, jumping, twisting or squatting.

The ALJ gave substantial weight to the opinion of Dr. Palmer, who was able to review Plaintiff's medical history and perform an examination on him.  (Tr. at 20-21, 250-57.)  The ALJ found his assessment consistent with the physical examination as well as the objective medical evidence of record.

The ALJ also gave "appropriate weight" to the opinion of Dr. Kattapong, who was able to review the medical evidence and was familiar with rules and regulations of the Social Security Administration.  (Tr. at 20-21, 258-65.)  The ALJ found her opinion consistent with Dr. Palmer's.

As to Dr. Erickson, the ALJ found that despite Plaintiff's impairments and limitations, Dr. Erickson repeatedly noted that Plaintiff retains the ability to perform sedentary work.  (Tr. at 20-21, 168-99, 200-33, 282-85.)  The ALJ gave this opinion "appropriate weight" finding that, while consistent with Drs. Palmer and Kattapong, "this [opinion] might be more restrictive than necessary given the minimal objective findings in the record."

The Court finds that the ALJ properly considered Dr. Erickson's opinion finding it "consistent with the examination of Doctor Palmer and the opinion of Doctor Kattapong," and maybe "more restrictive then necessary given the minimal objective findings in the record."  Thus, to the extent that said opinion could be construed contradictory to the greater

1    objective medical evidence of record, the ALJ gave specific and legitimate reasons, based
2    on substantial evidence in the record to discount it.

3    **3.     Substantial evidence of medically determined impairments**

4           Plaintiff alleges that the ALJ erred at step two of the sequential evaluation process by
5    failing to consider substantial evidence of medically determined impairments.  In his brief,
6    Plaintiff groups together several test results that measured out of the normal range: "chronic
7    fatigue (AR 360-361) and laboratory evidence reveals extremely low Vitamin D levels (AR
8    199 (10/10); hypothyroidism; and extremely high cholesterol. hovering between 400-600
9    (normal range 149) (See also AR 187 at 600 (2/11); AR 193 at 457 (8/11); AR 182 at 363
10   (9/12)) and by indications of an underlying inflammation or infection as his C-reactive
11   protein levels which have also been very high at 9.02 (normal range 0-3.0). (AR 207and AR
12   197) Each of these conditions can be reasonably be expected to result in fatigue and
13   arthralgias. (AR 147)" Plaintiff claims that "at the very least, the laboratory evidence should
14   have triggered the requirement for further development."

15          At step two of the sequential evaluation process, a claimant has the burden of
16   presenting evidence of medical signs, symptoms, and laboratory findings that establish a
17   medically determinable physical or mental impairment that is severe, and that can be
18   expected to result in death or which has lasted or can be expected to last for a continuous
19   period of at least twelve months.  See Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir.
20   2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); 20 C.F.R. §§ 404.1520, 416.920.
21   Substantial evidence supports an ALJ's determination that a claimant is not disabled at step
22   two if "there are no medical signs or laboratory findings to substantiate the existence of a
23   medically determinable physical or mental impairment." Id. (quoting Social Security Ruling
24   (SSR) 96-4p, 1996 WL 374187, at *1-*2).

25          Step two is "a de minimis screening device [used] to dispose of groundless claims."
26   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Applying the standard of review to
27   the requirements of step two, a court must determine whether substantial evidence supports
28   the ALJ's finding that the medical evidence established that the claimant did not have a

1    medically severe impairment or combination of impairments.  See Webb v. Barnhart, 433

2    F.3d 683, 687 (9th Cir. 2005) (citation omitted); Yuckert v. Bowen, 841 F.2d 303, 306 (9th

3    Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of

4    regulations, numerous appellate courts have imposed a narrow construction upon the severity

5    regulation applied here.").  An ALJ properly finds that an impairment or combination of

6    impairments are "not severe" only if the evidence establishes a slight abnormality that has

7    "no more than a minimal effect on an individual's ability to work."  Webb, 433 F.3d at 686

8    (citation omitted).

9         Despite Plaintiff's listing of multiple test results that measured out of the normal range

10   at one time, the record fails to indicate that any of these test results alone or in combination

11   has more than a minimal effect on his ability to work.  Indeed, the ALJ specifically addressed

12   each of the test results and further developed the record at the May 22, 2014 hearing.  (Tr.

13   at 360-62.)  Plaintiff testified that each of these conditions are either under control, under

14   doctor care, or not an issue.  At no time did Plaintiff testify that any of these issues impact

15   his ability to work or function.

16        Accordingly, the Court finds that the ALJ correctly reviewed the medical evidence,

17   further developed the record, and properly concluded that the test results listed here which

18   measured out of the normal range did not have more than a minimal effect on Plaintiff's

19   ability to work, and thus were not severe impairments.

20   **4.    The ALJ's credibility determination**

21        Plaintiff argues that the ALJ erred in her credibility determination by stating that the

22   ALJ failed to "consider the evidence as a whole in her determination of Plaintiff's

23   credibility."

24        To determine whether a claimant's testimony regarding subjective pain or symptoms

25   is credible, the ALJ must engage in a two-step analysis.  "First, the ALJ must determine

26   whether the claimant has presented objective medical evidence of an underlying impairment

27   'which could reasonably be expected to produce the pain or other symptoms alleged.'  The

28   claimant, however, 'need not show that her impairment could reasonably be expected to

cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1037 (citations omitted).   General assertions that the claimant's testimony is not credible are insufficient.  See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Smolen, 80 F.3d at 1284; see Orn, 495 F.3d at 637-39.[2]  The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ."  Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff reported constant pain and range of motion limitations of his right knee exacerbated by getting up from a sitting position; he wakes up in extreme pain and spends his day trying to find ways to ease the pain.  He is unable to lift his leg to put on his pants,

---

[2]  With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting.  See Fair, 885 F.2d at 603.  The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.  See id.

shoes or socks.  He helps by watching his kids, and with some household chores, which someone has to help finish if his leg starts to hurt, and he limits activities as he does not want to trigger more pain.  He can drive, but he cannot go out alone.  He uses a driving cart to shop, and he also reports he can handle money and bank accounts.  He reports his conditions affect nearly all of his physical activities and his ability to complete tasks.  He can only walk about half a block or less before having to rest about 20 minutes.  He denies problems with attention and following instructions.  At the time of his function report he was using prescribed crutches to ambulate.

Plaintiff testified that while he might be able to read a page of a newspaper, he would not be able to write one sentence about what he read and he tends to forget right away.  He also testified he has difficulties balancing a checkbook, filling out an application, or learning new things like at a desk job.  Plaintiff testified he could only sit for 20 to 30 minutes before having to shift positions.  He testified as to his efforts to recover with the knee surgery with follow-up treatment and his weight loss (of more than 50 pounds).  He also testified of his continued pain, and that he is homeless with his finance and three kids, currently staying in a motel room through the assistance of an agency.

In her decision, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  (Tr. at 19-20.)  In addressing and ultimately discounting Plaintiff's credibility, the ALJ relied solely on her objective medical findings.

Although objective medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects, a claimant's subjective pain testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence.  See Rolling v. Massanari, 261 F.3d 853, 957 (9th Cir. 2001). See also Reddick, 157 F.3d at 723 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because the are unsupported by objective medical evidence.")  Instead, "the absence

of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." SSR 96-7p. Accordingly, in the instant matter, the Court finds that the ALJ erred in that the credibility determination cannot be based solely on objective medical evidence.

Further, since there was no finding of malingering, the ALJ's reasons for discrediting Plaintiff's testimony must be "clear and convincing." Here, the ALJ took into account only one factor: the objective medical evidence. This reason alone is not clear and convincing.

Therefore, in light of the fact that the Court finds that the ALJ's reason for discrediting Plaintiff's subjective symptom testimony was legally insufficient, the Court declines to reach Plaintiff's remaining arguments that the ALJ erred by "failing to properly consider substantial evidence that plaintiff's inability to meet significant requirements of 'light work' results in a determination he is limited to a 'sedentary' or 'less-than-sedentary' exertional RFC," and failing to consider new evidence submitted to the Appeal's Council. The Court will order that the decision of the ALJ be vacated and the case be remanded.

"[R]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009)). "[T]he proper course, except in rare circumstances, is remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam). The Ninth Circuit has held that when "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "to the Secretary for proper consideration of step three equivalence"). Here, the record contains evidentiary conflicts that make an award of benefits inappropriate and require further evaluation on remand. Specifically, remand is appropriate for a renewed residual functional

capacity assessment, which accurately addresses Plaintiff's credibility as well as the new evidence submitted to the Appeal's Council.

## V. CONCLUSION

For the reasons discussed in this Order, the Commissioner's decision will be vacated and this matter will be remanded for further administrative proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth in this Order;

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 22nd day of January, 2016.

Michelle H. Burns
United States Magistrate Judge